```
            UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| LOGAN P. HATCH, | : | **CIVIL NO. 3:06-CV-1936** |
| c/o NICOLE HATCH, | : | |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| MICHAEL J. ASTRUE[1], | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant` | | |

## REPORT AND RECOMMENDATION

The plaintiff, Logan P. Hatch, has brought this civil action under the authority of 42 U.S.C. § 1383(c)(3) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security Supplemental Security Income.

On August 29, 2002, the plaintiff, Logan P. Hatch, a child born on June 22, 2002, by his mother, Nicole Hatch, applied for Supplemental Security Income benefits. The plaintiff alleges that he has been under a disability since

---

[1] Michael J. Astrue became the Commissioner of Social Security, effective February 12, 2007, to succeed Linda S. McMahon. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

August 29, 2002 as the result of bilateral club foot deformities.

On September 18, 2003, the ALJ issued a decision denying the plaintiff benefits. (Tr. 12-16). The Appeals Council denied the plaintiff's request for review (Tr. 4-5), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed an appeal to this court pursuant to 42 U.S.C. § 405(g) on February 12, 2004. *Hatch v. Barnhart,* M.D. Pa. Civil No. 3:04-CV-0319. By Order of August 24, 2004 (Munley, J.), case was remanded to the Commissioner for further consideration in light of the plaintiff's new evidence.

After a denial of the plaintiff's remanded claim a second hearing was held before an administrative law judge (ALJ) on February 7, 2005. (Tr. 352-363).

On March 3, 2005, the ALJ issued his decision denying the claim for benefits. (Tr. 200-205).

Nicole Hatch filed this second complaint (appeal) on behalf of the plaintiff with this court on October 2, 2006. On

2

December 4, 2006, the defendant filed an answer to the complaint along with a copy of the administrative record. Pursuant to Local Rules 83.40.4 and 83.40.5 and this court's Order of December 7, 2006, the plaintiff filed his brief on March 16, 2007 and the defendant filed his brief on April 20, 2007.  No reply brief was filed.

If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1998).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict around the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the

possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

As was noted upon the court's initial review of this case, Congress in 1996 altered the statutory disability standard for children seeking SSI. Pub.L. No. 104-193 (August 22, 1996). Section 211(a)(4) of the 1996 legislation, codified at 42 U.S.C. § 1382c(a)(3)(C)(I), provides:

4

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Pub.L. No. 104-193 § 211(a)(4).

The rules applicable to a child alleging disability prescribe a three-step sequential evaluation under which the Administrative Law Judge must consider: (1) whether the child is engaging in substantial gainful activity; (2) whether the child has a mentally determinable impairment (physical or mental) or combination of impairments that is severe; (3) whether the child's impairment(s) meets, medically equals, or functionally equals in severity any of the listed impairments at 20 C.F.R. § 404, Subpt. P, App. 1. *See* 20 C.F.R. § 416.924(a).

A child meets the listing if the specific findings detailed within the description of a listing exist with respect to that child's diagnosis. 20 C.F.R. § 416.924(d)(1). A child medically equals a listing if the medical findings with respect

5

to the child's impairments are at least equal in severity and duration to the listed findings. 20 C.F.R. § 416.926(a).  A child functionally equals a listing when she has a severe impairment that results in "marked" limitations in two domains of functioning or in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

There are six domains of functioning used in determining functional equivalence: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).  A marked limitation in a domain is found when an impairment interferes seriously with a plaintiff's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).  A marked limitation is more than moderate but less than extreme. *Id.*  An extreme limitation in a domain is found when the impairment interferes "very seriously" with a plaintiff's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).  An extreme limitation is more than marked and is a description given to the worst limitations. *Id.*  An additional factor which is

considered in determining functional equivalence is whether or not the activities of the child asserting disability are typical of other unimpaired children of the same age. 20 C.F.R. § 416.926a(b)(2).

The ALJ determined that Logan has not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 205).

The ALJ determined that Logan has a severe impairment (bilateral club feet).  The ALJ determined that the impairment does not meet or medically equal the severity of any listed impairment.  The ALJ further found that Logan does not have an "extreme" limitation in any domain of functioning or a "marked" limitation in any domain of functioning.  On the basis of these findings, the ALJ found Logan not to be under a disability and denied the application for Supplemental Security Income payments.

Logan's mother testified at the February 7, 2005 hearing that Logan's condition had not improved.  Logan, now two years old, had additional surgery in February of 2004.  Logan's feet are turned in and he can not run.  He can not climb, jump or

hop.  He can not get on the toilet.  Logan becomes frustrated in not being able to do things that other children of his age can do.  Logan's feet hurt at night.  He wakes up screaming. (Tr. 354-363).

The ALJ found that Logan has "more than slight abnormalities and more than minimal functional limitations" (Tr. 201), and noted and accepted Dr. Parenti's, the orthopedic surgeon's, report that Logan is limited in running, jumping, hopping, walking for long distances and in kicking a ball when compared with children his own age.  But the ALJ based the determination of the claim upon the fact that "Dr. Parenti was optimistic that [Logan] will be able to compete in most activities by the time he is older and a teenager." (Tr. 203, 204).  The ALJ, in finding no "disabling condition" also cites and places weight upon Dr. Parenti's post second surgery statement that Logan was doing "remarkably well."  Such a phrase, obviously, begs for context if it is going to be relied upon for a finding, but the ALJ accords it great weight without focusing upon the context.  The ALJ then goes directly to Dr. Parenti's optimism as to how Logan will be when he is a teenager. (Tr. 204).

Logan has bilateral club feet deformities and asthma. His club feet deformities are a severe impairment, the ALJ found.

The ALJ found neither marked limitations in two domains of functioning nor an extreme limitation in one domain of functioning.

The plaintiff argues in part that substantial evidence does not support the AlJ's finding of less than a marked impairment in the domain of moving about and manipulating objects and that substantial evidence does not support the ALJ's finding of less than a marked limitation in the domain of caring for himself.

As the plaintiff observes and as the defendant also acknowledges, the ALJ's finding is based upon the projection by Dr. Parenti that Logan will, possibly with additional surgeries, "be able to compete in most activities by the time he is older and a teenager."  For the ALJ to have decided the "marked limitation" issues based upon future potential rather than current facts was in error.

9

The ALJ stated that he considered the 20 C.F.R. § 416.924a factors and the 20 C.F.R. § 416.926a(b) questions. The 20 C.F.R. § 416.924a factors as identified by the ALJ are:

> How the child's functioning compares to that of unimpaired children of the same age.
>
> The combined effects of multiple impairments on the child's functioning.
>
> How well the child can initiate, sustain, and complete activities; including the amount of help or adaptations needed and the effects of structured or supportive settings.
>
> How the child functions in unfamiliar, or one-on-one settings compared to the usual settings at home, at school, or in the community.
>
> When relevant and available; information concerning a child's placement in a special education setting, accommodations provided to the child, and the child's attendance and participation in the education program.
>
> The impact of chronic illness and limitations that interfere with a child's activities over time and may limit the child's functioning.
>
> The effects of treatment, including medications, on the child's functioning.

(Tr. 202).

The 20 C.F.R. § 416.926a(b) questions are:

> (i) What activities are you able to perform?
>
> (ii) What activities are you not able to perform?

10

>             (iii) Which of your activities are limited
>             or restricted compared to other children
>             your age who do not have impairments?
>
>             (iv) Where do you have difficulty with
>             your activities-at home, in childcare, at
>             school, or in the community?
>
>             (v) Do you have difficulty independently
>             initiating, sustaining, or completing
>             activities?
>
>             (vi) What kind of help do you need to do
>             your activities, how much help do you
>             need, and how often do you need it?

20 C.F.R. § 416.926a(b).

The ALJ did not state specifically how Logan's current condition and limitations were evaluated, or findings made, under the 20 C.F.R. § 416.924a factors and 20 C.F.R. § 416.926a(b) questions. Instead, the ALJ moved on to state the absence of a "disabling condition" and to base a decision upon a post-surgical physician's statement that the patient was doing "remarkably well" and the surgeon's optimistic projection of the patient's orthopedic condition eleven years later in the patient's life.

The defendant emphasizes Dr. Parenti's appraisals of his surgeries, and his descriptions of these surgeries as

11

successful: the feet of the child looked "like they are in excellent alignment currently with all components of the clubfoot corrected." (Doc. 11, citing Tr. 131, 135, 164, 190, 307, 308).  The aligned appearance of the feet does not negate the undisputed evidence of greater than moderate limitations on Logan's ability to move around.  He has a marked impairment in that domain.  He also has a marked impairment in the domain of self-care.  Logan's mother described his limitations as to caring for himself.  These descriptions are not rebutted, were not rejected by the ALJ, and are descriptive of a child with marked limitations in these two domains.  The defendant does not set forth a rationale for accepting a decision that is based upon future potential rather than actual current facts.  The Commissioner's regulations sound in the present tense.

Accordingly, it is recommended that the appeal be decided in favor of the plaintiff and that the Commissioner be directed to pay the past and future[2] benefits to the plaintiff that are due.

                                                ***/s/ J. Andrew Smyser***
                                                J. Andrew Smyser
                                                Magistrate Judge

Dated:  May 14, 2007.

---

[2] The Commissioner may terminate benefits in the future if as projected the child ceases to have marked impairments in two domains of functioning.